UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO;<br>GOVERNOR PEDRO R. PIERLUISI;<br><br>PUERTO RICO DEPARTMENT OF JUSTICE;<br>DOMINGO EMANUELLI HERNANDEZ;<br>SECRETARY OF JUSTICE<br><br>PUERTO RICO SPORTS AND RECREATION DEPARTMENT;<br>RAY QUINONES<br>SECRETARY OF SPORTS AND RECREATION DEPARTMENT<br><br>Defendants. | CIVIL NO.: 21-1248<br><br><br>FALSE CLAIMS ACT<br>31 U.S.C. § 3729 et seq. |

COMPLAINT UNDER THE FALSE CLAIMS
ACT, 31 U.S.C. § 3729 ET SEQ.

TO THE HONORABLE COURT:

COMES NOW the United States of America, by and through the undersigned attorneys, and very respectfully alleges and prays:

**INTRODUCTION**

1.      The United States files this action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., to recover damages and civil monetary penalties from the defendants' false claims to the United States Department of Education ("US ED") made in violation of federal law and

1

applicable statutory provisions.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1345 and its general equitable jurisdiction; as well as subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, since the civil action arises under the laws of the United States, in particular, 31 U.S.C. §§ 3729 et seq.

3.     This Court has personal jurisdiction over Defendants, which consist of the Government of Puerto Rico and its named Governor, the Puerto Rico Department of Justice and its named Secretary, and the Puerto Rico Department of Sports and Recreation, and its named Secretary.

4.     Venue is proper in this District under 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a). Defendants' are Puerto Rico governmental entities and authorized agents and officials located within the District of Puerto Rico.

## PARTIES

5.     The plaintiff is the United States of America, on behalf of its United States Department of Education.

6.     Defendants consist of the Government of Puerto Rico and its named Governor, the Puerto Rico Department of Justice and its named Secretary, and the Puerto Rico Department of Sports and Recreation ("hereinafter DRD"), and its named Secretary, in their official capacity.

## INTRODUCTION, APPLICABLE US ED, PR DOE PROGRAMS AND THE FCA

7.     The Puerto Rico Department of Education ("PR DOE") is responsible for the planning and administration of all public elementary, secondary and some post-secondary

education throughout Puerto Rico.

8.     The PR DOE administers various federal financial assistance programs funded by the US ED intended for students in public and private schools.  The PR DOE receives funds under Title I, Part A ("commonly known as "Title I funds") of the Elementary and Secondary Education Act of 1965, as amended ("ESEA") to provide financial assistance to local education agencies and schools with high numbers or high percentages of children from low-income families to help ensure that all children meet challenging state academic standards.

9.     The PR DOE was permitted to use Title I funds allocated to them to pay for, among other things, educational projects to carry out its mission following federal and state policies and regulations.  In order to use the Title I funds, the PR DOE entered into various covenants with DRD.  These covenants included a clause stating that DRD could not subcontract the services stipulated in the covenant.  DRD could only contract personnel to assist in carrying out the services to be provided by DRD.  Within the PR DOE, the Adjudication of Funds and Work Plans Unit operated a web-based platform knowns as the UPT System, which was used to submit, evaluate, and approve work plans to be funded by US ED.

10.     DRD is a government agency, as that term is defined under the organic state statute creating the agency; and is also a department and subdivision of the government of the Commonwealth of Puerto Rico.

11.     Ramon Orta Rodriguez ("Orta Rodriguez") was the Secretary of the DRD from in or about January of 2013 to in or about December of 2016.  As the Secretary of the DRD, Orta Rodriguez was an agent, as that term is defined under state and federal statutes related to agency legal principles. Orta Rodriguez was also authorized to act on behalf of the DRD.

12.     Edgardo Vazquez Morales ("Vazquez Morales") was the Special Assistant to the Secretary of the DRD from in or about January of 2013 to in or about December of 2016.  As a Special Assistant, Vazquez Morales was an agent, as that term is defined under state and federal statutes related to agency legal principles.  Vazquez Morales was also authorized to act on behalf of the DRD.

13.     From in or about the year 2013 to in or about the year 2016, Orta Rodriguez and Vazquez Morales, on behalf of the DRD, awarded contracts totaling ten million five hundred ten thousand four hundred sixty dollars ($10,510,460.00) to Rosso Group, Inc. (hereinafter "Rosso").  Rosso was created by Oscar Rodriguez Torres (Rosso's sole owner, Incorporator, President, Secretary, and Treasurer) to fund projects awarded by Orta Rodriguez as Secretary of the DRD.

14.     The FCA imposes liability for any person or entity who knowingly submits a false claim to the government or causes another to submit a false claim to the government, or knowingly makes a false record or statement to get a false claim paid by the government.  The "reverse false claims" provision of the FCA imposes liability on any party who knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 37299(a)(1)(G).  The FCA establishes that an obligation is defined as an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment.  Under the "reverse false claims" section of the FCA, instead of submitting a potentially fraudulent bill to the government for work, an entity retains money it should have paid to the government. 31 U.S.C. § 3729(b)(3).

15.     To make a prima facie case of liability under the reverse false claim provision of the FCA, a plaintiff must prove that the defendant knowingly failed to pay back the government money or

property that it was obligated to return; in addition, there must be a clear obligation or liability to the government. 31 U.S.C. § 3729(b)(3). The FCA defines knowingly to "mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information," and "require[s] no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1).

16.     The Office of Inspector General ("OIG") of the US ED is responsible for identifying fraud, waste, abuse, and criminal activity involving US ED funds, programs and operations. The OIG conduct independent audits and other reviews, and criminal as well as civil investigations.

## STATEMENT OF FACTS

17.     On January 13, 2016, a complainant alleged that ROSSO was awarded contracts from the DRD without following a competitive bidding/proposal process. From 2013 to 2015, DRD awarded contracts to ROSSO amounting to $7 million approximately to provide training to teachers and students at public schools in the southeast PR region. The complainant also alleged that as part of the scheme, PR DOE awarded contracts to DRD to provide training to teachers and students. Contracts between government agencies need not to follow a competitive process. DRD then fully subcontracted ROSSO to provide those same services. The contracts between PR DOE and DRD prohibited the subcontracting of the services by DRD. The contracts were funded with federal educational funds.

18.     PRDE and DRD entered into the following covenants:

a.   COVENANT 2013-AF0359, dated June 21, 2013, in the amount of $4,320,000 to provide educational services to students and other activities. The covenant was signed upon the approval of Work Plan #13-26 "Healthy Summer: A Project For The Development of Academic Skills And Lifestyles" submitted by DRD to PR DOE.

      b.   COVENANT 2014-AF0247, dated March 6, 2014, in the amount of $3,998,700 to provide educational services to students.  The covenant was signed upon the approval of Work Plan #14-10 "Healthy Generation: A Project For The Development of Academic Skills And Healthy Lifestyles" submitted by DRD to PR DOE.

19.     According to the Puerto Rico Comptroller's Office (OCPR) database, DRD awarded ROSSO the following contracts:

      a.   CONTRACT 2014-000007, dated July 3, 2013, in the amount of $3,564,000 to develop the "HEALTHY SUMMER" project providing educational services to students and other activities.

      b.   CONTRACT 2014-001189, dated March 13, 2014, in the amount of $3,198,960 to develop the "HEALTHY LEARNING" project providing educational services to students and other activities.

20.     These covenants were funded with US ED funds under the Title I, Part A, of ESEA. Both covenants included a clause stating that DRD could not subcontract the services stipulated in the covenants.  DRD could only contract personnel to assist in carrying out the services. The Work Plan for both covenants established, among other things, that any contracting performed by DRD to fulfill the projects needed to follow a request for proposals/bids process as required by federal and state procurement guidelines contained, in part, on the PR DOE's Guide For The Selection of Professional Services Paid With Federal Funds.  An US ED OIG analysis of all four covenants and contracts revealed that the services to be provided by ROSSO to DRD under the contracts for the Healthy Summer and Healthy Learning projects were the same services included in the covenants between PR DOE and DRD.

21.     OCPR auditors conducted a review at DRD of the contract awarding process and services provided by ROSSO.  The OCPR auditors reviewed regulations, contracts and financial documents.  The OCPR review revealed the absence of fair competition to select ROSSO as a DRD

provider, conflict of interest, and documents with false information.  OIG US ED subsequently corroborated this information through a formal investigation.

22.     The OIG US ED's investigation revealed that DRD, through former Secretary Orta Rodriguez, solicited federal funds from PR DOE based upon material misrepresentations regarding DRD's ability to perform the activities and the scope of the activities subject to the proposals.  DRD lacked the personnel to perform the activities subject to the covenants.

23.     The covenants between PRDE and DRD contained a clause that prohibited DRD from completely subcontracting the activities subject to the covenants.  Subsequently, DRD entered into a contract with ROSSO, without ROSSO entering into a competitive bidding process or any scrutiny from PR DOE, for services to be rendered pursuant to covenants with PR DOE.  As a result, DRD obtained net proceeds from monies PR DOE paid DRD on or about April of 2015 in the amount of the difference between the covenants reached with PR DOE and the contracts awarded to ROSSO ($799,740.00).  Afterwards, DRD converted these proceeds for its own use. The net proceeds converted to the use of DRD were not returned to PR DOE and were used for purposes outside of the scope of the covenants, and federal grant rules.  Efforts undertaken by the United States Department of Justice and the US ED to recoup back these net proceeds have not been successful.  Currently, DRD has not filed any judicial or administrative proceedings seeking to establish that DRD is legally authorized to retain the net proceeds fraudulently obtained as part of the DRD and ROSSO's scheme.

24.     DRD allowed ROSSO officials to prepare and submit invoices and supporting documentation to PR DOE without identifying ROSSO as the provider of services.  DRD solicited and requested payment from PR DOE for services actually rendered by ROSSO.  Moreover, DRD

officials created fake bids and back dated other documents containing false information in an attempt to conceal the manner in which DRD awarded contracts to ROSSO and to make it appear as if a competitive bidding process had been carried out when awarding contracts to ROSSO.  No competitive bidding process was used for any contracts awarded by DRD to ROSSO.

25.    The United States contends that it has certain civil claims against Defendants arising from the undue submission of Title I, Part A of ESEA program reimbursement invoices to the US ED, and for which DRD knowingly failed to pay back federal funds to US ED; funds that it was obligated to return.  The net proceeds to the DRD created by the DRD and ROSSO's fraudulent scheme established a clear obligation or liability to the United States.  The United States contends that DRD's active refusal to pay back the federal funds it knows were fraudulently obtained and were later used in violation of contractual and US ED grant rules constitute illegal claims against the United States under the FCA.  This conduct is referred to below as the "Covered Conduct."

## CLAIM FOR RELIEF

### False Claims Act− 31 U.S.C. § 3729 (a)(1)(G)

26.    This is a claim for damages and civil monetary penalties under the FCA, 31 U.S.C. § 3729 (a)(1)(G).

27.    Paragraphs 1 through 25 of this Complaint are hereby re-alleged and incorporated as though fully set forth herein.

28.    As part of the scheme to defraud and described as the covered conduct, DRD submitted and caused to be submitted a fraudulent claim for reimbursement payment under Title I, Part A of the ESEA program to the US ED related to the students who participated in the Healthy Generation educational services program.  This payment resulted in net proceeds to the DRD that

8

were fraudulently converted to DRD's use for expenditures prohibited by federal program rules and covenants entered into by DRD with the PR DOE.

29.    Under the FCA, a "claim" includes requests for money presented to agents of the United States or to a contractor, grantee or other recipient, if the money is to be used on the government's behalf or to advance a government interest, as long as the United States provided any portion of the money requested.  An obligation is defined as an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment.

30.    Each of these false statements and/or claims constitute unique claims for reimbursement of federal monies under a federal educational grant program.  As such, damages, as well as civil monetary penalties, must be assigned as allowed by law in an amount ranging from $11,181.00 to $23,331.00 each.

**PRAYER FOR RELIEF**

WHEREFORE, the United Sates respectfully requests that judgment be entered in its favor and against the Defendants as follows:

A.    Treble damages in the amount of TWO MILLION THREE HUNDRED NINETY-NINE THOUSAND TWO HUNDRED TWENTY ($2,399,220.00), for the false claim submitted under the FCA and that resulted in the fraudulent net proceeds as fully described above.

B.    Impose a civil monetary penalty in the amount of $23,331.00.

C.    Grant the United States interests from the date of judgment and such other and further relief as this Court deems just and proper.

9

RESPECTFULLY SUBMITTED,

     In San Juan, Puerto Rico, this 1st day of June 2021.

                          W. STEPHEN MULDROW
                          United States Attorney

                          */s Jorge L. Matos*
                          Jorge L. Matos
                          Assistant U.S. Attorney
                          Civil Division
                          USDC No. G01307
                          Torre Chardon, Room 1201
                          350 Carlos Chardon Avenue
                          San Juan, PR 00918
                          Tel. (787) 282-1814
                          Fax. (787) 766-6219
                          E-mail: Jorge.L.Matos2@usdoj.gov